**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

RANDY MARION CHAPMAN,

               Plaintiff,

v.                                   CIVIL ACTION NO.  2:04-0605

TIM JARRELL, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment [Docket 47] filed by three of the defendants:  the City of Madison, Mayor Phillip Harless, and Chief of Police Chet Burgess.  The motion seeks summary judgment on the plaintiff's claims relating to the imposition of (1) supervisory liability on Mayor Harless and Chief Burgess; (2) municipal liability on the City of Madison; and (3) vicarious liability on the City of Madison.  For the reasons explained herein, the motion is **DENIED** on the first two claims and **GRANTED** on the third claim.

*I. Background*

On June 23, 2002, at approximately 2:00 a.m., the plaintiff, Randy Marion Chapman, and his girlfriend were asleep in Chapman's apartment in Madison, West Virginia.  According to the plaintiff, his girlfriend woke up and went outside to walk the dog when she noticed her truck had apparently been stolen.  (Compl. ¶¶ 15–16.)  Once informed of the missing truck, the plaintiff walked down the street to his son's apartment to listen to a police scanner while his girlfriend called

the police.  (*Id*. ¶¶ 16–17.)  The police arrived while the plaintiff was at his son's apartment.  (*Id*. ¶ 18.)  After talking to the plaintiff's girlfriend, the police wanted to discuss the stolen vehicle with the plaintiff.  (*Id*.)  The plaintiff's girlfriend called the plaintiff and explained that the police wanted a statement from him.  (*Id*.)  When speaking to his girlfriend, the plaintiff questioned why it was necessary for him to give a statement.  (*Id*.)  Madison Police Officer Tim Jarrell allegedly overheard this conversation and then "personally" told the plaintiff he wanted a statement.  (*Id*. ¶ 19.)  When the plaintiff asked whether he should return to his apartment to meet the officers or stay at his son's apartment, Officer Jarrell explained the police would meet the plaintiff at his son's place.  (*Id*. ¶ 20.)

The plaintiff and his son went outside to await the arrival of the officers.  (*Id*. ¶ 21.)  Two officers, Officer Jarrell and Officer Workman, arrived in separate police cars.  (*Id*.)  According to the plaintiff, as soon as Officer Jarrell got out of his car, he aggressively approached the plaintiff and said, "You're going to respect me old man!"  (*Id*. ¶ 22.)  The plaintiff alleges that Officer Jarrell then engaged in a series of acts that constituted excessive force.  Specifically, the plaintiff claims that Officer Jarrell head-butted him, struck him in the face with a large flashlight, kneed him repeatedly in the groin, threw him in the back of the police car, and jumped on him while punching his jaw. (*Id*. ¶¶ 22–26.)  The behavior stopped only once Officer Workman persuaded Officer Jarrell to "stop the attack."  (*Id*. ¶ 26.)  In route to the hospital, the plaintiff claims Officer Jarrell pulled his gun and threatened the plaintiff's life if he ever told anyone about the incident.  (*Id*. ¶ 28.)

Following a stop at the Boone Memorial Hospital, Officer Jarrell took the plaintiff to the Southwestern Regional Jail.  (*Id*. ¶ 29.)  The next day, the plaintiff was charged with two counts of battery on a police officer, two counts of assault on a police officer, one count of public intoxication,

and one count of obstructing a police officer.  (*Id*.)  The Boone County Magistrate Court later dismissed all charges.  (*Id*. ¶ 31.)

On June 17, 2004, the plaintiff filed the pending civil action in this court.  The Complaint alleges claims against multiple defendants:  Officer Tim Jarrell, a police officer for the City of Madison; the City of Madison and its police department; Mayor Harless; Chief Burgess; Officer Workman, a police officer for the City of Danville Police Department; the City of Danville and its police department; Phillip Boehm, the Chief of Police of Danville; and Mark Mclure, the Mayor of Danville.  The plaintiff's claims against Officer Workman, the City of Danville, the City of Danville Police Department, Phillip Boehm, and Mark Mclure have been settled.  The pending summary judgment motion pertains only to the claims against the City of Madison, Mayor Harless, and Chief Burgess.

## II. Standard for Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Supervisory Liability

The plaintiff claims that Mayor Harless and Chief Burgess had a duty to supervise and train the employees of the city's police department so they would "not use excessive force during an unlawful arrest." (Compl. ¶ 55.) The plaintiff asserts that a breach of this duty caused his injuries. (*Id.* ¶¶ 56–57.) This claim seeks to impose supervisory liability under 42 U.S.C. § 1983, which requires proof of three elements: (1) the supervisor had actual or constructive knowledge that the subordinate engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate to constitute a "deliberate indifference to or tacit authorization" of the offensive conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's asserted constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The defendants contend they are entitled to summary judgment on this claim because the plaintiff lacks the evidence necessary to establish all three elements required to impose supervisory liability. (Mem. Supp. Defs.' Mot. for Summ. J. 8.) In response to the defendants' motion, the

plaintiff points to evidence, mostly in the form of deposition transcripts, that the plaintiff contends would be sufficient to sustain each element.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 19.)  Although the court will not weigh the credibility of this evidence, the court must decide if a reasonable jury could find that the plaintiff's evidence is sufficient to sustain a claim for supervisory liability. *Anderson*, 477 U.S. at 256.  In making this calculation, the credibility of the plaintiff's evidence is to be presumed.  *Shaw*, 13 F.3d at 797; *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990).

To meet the requirements of the first element, the plaintiff must show that the supervisor had knowledge of the subordinate's conduct that posed a "pervasive" and "unreasonable" risk of constitutional injuries to people like the plaintiff.  *Shaw*, 13 F.3d at 799.  Chief Burgess stated that he had actual knowledge of Officer Jarrell's previous conduct, specifically situations involving Douglas Ratliff and Randall Foxx.  (Burgess Dep. 63:6–23, 77:13–14, June 29, 2004 in *Ratliff v. Workman*.)  Chief Burgess also explained he reports any problems with officers to Mayor Harless. (*Id*. 12:7–14.)  Therefore, it is reasonable to infer that Mayor Harless also had knowledge of Officer's Jarrell's conduct.

To establish a "pervasive" and "unreasonable" risk of harm, the plaintiff must point to "evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."  *Shaw*, 13 F.3d at 799.  In *Shaw v. Stroud*, the Fourth Circuit found that the plaintiff established a "pervasive" and "unreasonable" risk of harm by producing evidence of at least three occasions where a police officer allegedly used excessive force.  *Id*. at 800.  Based on the plaintiff's evidence in this case, the defendants had knowledge that Officer Jarrell possibly had employed excessive force on several occasions in the past.

-5-

In this case, the plaintiff primarily points to two occasions where Officer Jarrell allegedly used excessive force that posed an unreasonable risk of harm of constitutional injury. First, the plaintiff points to an incident that occurred on February 24, 2001, five days following Officer Jarrell's "hiring,"[1] which involved the arrest of Douglas Ratliff. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 16–17.) Officer Jarrell was assisting another officer in checking out a local bar for remaining open past the legal closing time. (*Id.* 2.) In the parking lot, Officer Jarrell and Mr. Ratliff got into an altercation that resulted in Officer Jarrell allegedly assaulting, pepper spraying, and cuffing Mr. Ratliff. (*Id.*; Burgess Dep. 140:4–11.) Officer Jarrell allegedly pepper sprayed Mr. Ratliff even though Mr. Ratliff was intoxicated, which is in direct violation of the Code of Conduct of the Madison City Police. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 3.) Mr. Ratliff filed a civil suit against Officer Jarrell for using excessive force.[2]

The second major incident the plaintiff points to occurred on March 14, 2002. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 4.) Officer Jarrell, accompanied by another officer, pulled over a car driven by Phillip Scott Bell. (*Id.*) Randall Foxx was a passenger in the car. Mr. Foxx, who was intoxicated, was ordered out of the car by the officers. While taking off his seat belt, the officers allegedly pulled him from the vehicle. (Foxx Dep. 33:12–13, Feb. 21, 2005 in *Foxx v. Workman.*) Once out of the car, Officer Jarrell allegedly hit Mr. Foxx in the back of the head. (*Id.* 33:22.) The officers allegedly pepper sprayed Mr. Foxx even though he was intoxicated. (*Id.* 35:2–3.)

---

[1]     The plaintiff asserts that Officer Jarrell was negligently hired by the City of Madison. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 12–14.) The plaintiff contends that Officer Jarrell was hired without any previous training and was hired in contravention of regular hiring practices. Specifically, Officer Jarrell was hired directly by the previous Mayor and was not hired by the committee of city officers that hires all other police officers. (*Id.*)

[2]     Mr. Ratliff's civil case was settled.

According to Mr. Foxx, the officers also slammed his head against the back of the driver's car. (*Id*. 35:19–20.) Once inside the police car, Mr. Foxx claims he was "pepper-sprayed a couple more times." (*Id*. 41:5.) Allegedly, Officer Jarrell rode in the backseat with Mr. Foxx. (*Id*. 42:11–12.) When asked why Officer Jarrell rode in the backseat, Mr. Foxx responded, "So he could beat the shit out of me." (*Id*. 42:14.) In addition to Officer Jarrell allegedly hitting Mr. Foxx on his knees and in the head "quite a few times," he also hit him more than thirty times in the ribs. (*Id*. 74:13–24.) According to Mr. Foxx, just before the officers arrived at the jail, the car stopped and the officers explained to him "they'd take the handcuffs and shackles off if we wanted to go outside the car, and that they could pop a cap in my head and dump me in the river and no one would ever miss me." (*Id*. 44:22–24, 45:1–3.) Mr. Foxx also filed a civil suit against Officer Jarrell for using excessive force.[3] (Pl.'s Resp. to Defs.' Mot. for Summ. J. 5.)

There is also evidence in the record that the Mayor requested Officer Jarrell's explanation for an incident that occurred on April 20, 2001. This evidence appears in the form of a letter written by Diana Galloway, the Mayor's Payroll Personnel Clerk, to Officer Jarrell on that same day. (Pl.'s Ex. 4 to Pl.'s Resp. to Defs.' Mot. for Summ. J.) The letter concludes with a statement that the Mayor wants Officer Jarrell to speak to him the next day.[4] Although the letter does not explicitly state that there were any complaints against Officer Jarrell's use of excessive force, it is further evidence that the city officials in this suit were on notice of Officer's Jarrell's conduct and of the Mayor's close involvement with the Madison police force.

---

[3]     Mr. Foxx's civil suit was settled.

[4]     Specifically, the letter oddly states: "And the Mayor wants to speak with you on Saturday, April 21, 2001.  He said you were to find him.  Do not call him tonight." (Pl.'s Ex. 4 to Pl.'s Resp. to Defs.' Mot. for Summ. J.)

The defendants claim these occasions do not establish a "pervasive" and "unreasonable" risk of harm because they could "only be relevant if [the] plaintiff can prove that Mayor Harless and Chief Burgess had knowledge of any *actual* wrongdoing by Officer Jarrell." (Mem. Supp. Defs.' Mot. for Summ. J. 11.) They argue there was no wrongdoing because Officer Jarrell was cleared by all investigations. (*Id.*) This argument, however, could defeat the purpose of supervisory liability, which is to hold supervisors accountable for failing to take action against reckless subordinates. For example, assume that Police Chief *X* gets a complaint against a subordinate, Officer *Y*. Even though Police Chief *X* fails to properly investigate the matter, he announces in a press conference that the matter has been fully investigated and Officer *Y* has been cleared of any wrongdoing. Based on the defendants' argument, being cleared of any wrongdoing by an "investigation," regardless of the investigation's depth, is enough to preclude a finding of supervisory liability. Obviously, this argument would undermine every conceivable claim of supervisory liability. An official finding of wrongdoing by a subordinate is not a prerequisite for establishing liability on a supervisor. In *Shaw*, the court imposed supervisory liability on a police sergeant even though no formal complaints against his subordinate were ever filed. *Shaw*, 13 F.3d at 800–01.

If the conduct alleged to occur to Mr. Ratliff, Mr. Foxx, and Mr. Chapman actually occurred, it is certainly conduct that poses an unreasonable risk of constitutional injuries. The court finds that the plaintiff has brought forward more than a "scintilla of evidence" on this issue and that a jury could reasonably decide that Officer Jarrell's supervisors, the Mayor and the Chief of Police, had knowledge of his conduct that potentially posed a "pervasive" and "unreasonable" risk of constitutional injury. Because of the evidence of the alleged prior uses of excessive force by Officer

Jarrell in such a short time frame, a reasonable jury could find that the first element necessary to impose supervisory liability is met.

To meet the requirements of the second element, the plaintiff must establish that the supervisors were deliberately indifferent to the subordinate's conduct by showing the supervisor's continuous inaction. *Shaw*, 13 F.3d at 799. To show the deliberate indifference of a supervisor, it is not enough to point to a single incident because a supervisor cannot be expected to prepare procedures that cover every conceivable scenario. *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980). In this case, however, the plaintiff has brought forth evidence of more than a single incident suggesting that Mayor Harless and Chief Burgess were deliberately indifferent to or implicitly authorized Officer Jarrell's alleged abusive conduct. *See Shaw*, 13 F.3d at 800 (finding evidence of separate witnesses complaining of inaction from a police sergeant in responding to allegations of a subordinate officer's use of excessive force raised a genuine issue of material fact as to whether he was deliberately indifferent to the alleged constitutionally offensive conduct).

The plaintiff has presented evidence of inaction following the altercation with Mr. Ratliff. Despite Officer Jarrell's use of force with Mr. Ratliff, he did not fill out a standard "Use of Force Form" that a police officer is supposed to fill out when employing the use of force. (Burgess Dep. 62:13–19.) Although Chief Burgess said that normally the failure to fill out a "Use of Force Form" warrants a reprimand, Mr. Ratliff's situation presented a "special circumstance" because Mr. Ratliff was a retired West Virginia State Trooper. (*Id.* 63:2–16.)

According to the plaintiff's evidence, Officer Jarrell received no form of reprimand or disciplinary action from the incident even though he used pepper spray on a visibly intoxicated subject. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 3.) Chief Burgess actually explained in his

-9-

deposition that even though he would have probably handled the situation similarly to Officers Jarrell and Workman, it was "probably not the right thing to do." (Burgess Dep. 64:18–20.)  While investigating the matter, Chief Burgess admitted he never called the owner of the bar or any of the bar's employees to try and find out what happened.  (*Id*. 157:1–6.)  When asked why he failed to do so, the Chief responded that he did not "have a very good relationship with most of them." (*Id*. 157:7–10.)  The Chief stated he did not attempt to contact these people despite his admission that if Mr. Ratliff's allegations—specifically that Officer Jarrell maced him while handcuffed and kicked him while on the ground—were true, that conduct would be in violation of the police department's procedures.  (*Id*. 161:13–23, 162:1–17.)  Although the defendants challenge the credibility of the plaintiff's evidence as it relates to the altercation with Mr. Ratliff, matters of credibility are for the jury.  At the summary judgment stage, the nonmoving party is entitled to "have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts resolved favorable to him." *Shaw*, 13 F.3d at 800 n.13 (quoting *Miller*, 913 F.2d at 1087).

The plaintiff also has presented evidence of inaction following the altercation with Mr. Foxx. The day following the altercation, Mr. Foxx called Chief Burgess from the hospital.  When Mr. Foxx explained he wanted to talk about the altercation, Chief Burgess went to the hospital to see him. (Burgess Dep. 76:19–21.)  Chief Burgess, however, spoke with Mr. Foxx for just five minutes because of Mr. Foxx's apparent attitude.  (*Id*. 77:4–6.)  Even though Chief Burgess observed that Mr. Foxx had physical injuries and was complaining that he was beaten by one of the Chief's police officers (*Id*. 77:13–14, 20–23), the plaintiff contends the Chief did not investigate the matter further. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 17–18.)  The defendants state that the Chief spoke with the officers about the incident and conducted an investigation.  (Defs.' Reply to Pl.'s Resp. to Defs.'

Mot. for Summ. J. 10–11.)  Chief Burgess says he also asked Mr. Foxx to follow up with him after he got out of the hospital (Burgess Dep. 77:7–10), but Mr. Foxx asserts the Chief never made this request.  (Foxx Dep. 53:16).  As stated above, matters of credibility are to be resolved by the jury.

The plaintiff has brought forth more than a scintilla of evidence suggesting that Chief Burgess and Mayor Harless were deliberately indifferent to Officer Jarrell's conduct.  A reasonable jury could find deliberate indifference based on the plaintiff's evidence that the Chief and Mayor knew that Officer Jarrell was well trained in martial arts, knew of alleged altercations in which he had used excessive force, and failed to investigate the allegations seriously.  The court finds that a genuine issue of material fact exists as to whether the Chief and Mayor were deliberately indifferent toward Officer Jarrell's conduct.

The third element of supervisory liability is established if the plaintiff can demonstrate an "affirmative causal link" between the supervisor's inaction and the plaintiff's harm.  *Shaw*, 13 F.3d at 799.  This element includes a cause in fact and proximate cause component.  *Id*.  The plaintiff asserts that the deliberate indifference of the Chief and the Mayor toward Officer Jarrell's previous conduct caused Officer Jarrell to remain on the police force and get the opportunity to use excessive force on the plaintiff.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 19.)  Although this element usually presents a "more difficult question," a reasonable jury could find an "affirmative causal link" in this case if the plaintiff's allegations are true.  *See Shaw*, 13 F.3d at 800 ("crediting the plaintiff's evidence, a reasonable jury could find that Stroud acted with deliberate indifference and that a causal link exists").  Because the plaintiff has brought forth concrete evidence that could enable a jury to find each of the three elements of supervisory liability, the court finds that genuine issues of material fact remain as to whether supervisory liability should be imposed.  This finding is consistent with

the Fourth Circuit's conclusion that "this issue is ordinarily one of fact, not law." *Id*. at 799. Accordingly, summary judgment is **DENIED** on this issue.

### B. Municipal Liability

Municipalities can be held liable for constitutional deprivations resulting from the conduct of their employees. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish a claim of municipal liability pursuant to § 1983, a plaintiff must demonstrate the existence of an official policy or custom fairly attributable to the municipality that proximately caused the deprivation of the plaintiff's constitutional rights. *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A custom can exist even though it has not been formally approved by the municipality. *Monell*, 436 U.S. at 690–91.

Municipal liability can result from a municipality's acquiescence to the decisions of subordinates. *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 527 (4th Cir. 2000); *see also Jeffes v. Barnes*, 208 F.3d 49, 64 (2d Cir. 2000) (explaining that a jury could find that a sheriff had enough knowledge of potential unconstitutional conduct that he acquiesced in or was deliberately indifferent toward complaints against his officers). The plaintiff contends that the City of Madison, via Mayor Harless and Chief Burgess, knew that Officer Jarrell frequently employed excessive force[5] and failed to take action to prevent this conduct from occurring in the future. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 21.) As a result of this inaction, the plaintiff was injured because Officer Jarrell continued using excessive force. (*Id*.) Specifically, the plaintiff alleges that the City of Madison had an

_____

[5]    In addition to employing excessive force, Officer Jarrell failed to complete required paperwork and allegedly pepper sprayed two intoxicated persons.

-12-

"unspoken custom . . . that permitted, tolerated[,] and perhaps even encouraged the use of excessive force." (*Id.*)  As evidence of this custom, the plaintiff points to the cursory investigations of the altercations with Mr. Ratliff and Mr. Foxx, the failure to reprimand or discipline Officer Jarrell, and the consistent failure to follow proper department procedure.  The plaintiff asserts that the type of constitutional injuries he received were bound to occur to someone due to the city officials' continued acquiescence to Officer Jarrell's conduct.  *See Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (explaining that a municipality's custom must make a specific constitutional injury "bound to happen, sooner or later, rather than merely likely to happen in the long run" to impose municipal liability under *Monell*).

As stated above, a question of fact remains as to whether Mayor Harless and Chief Burgess were deliberately indifferent toward Officer's Jarrell previous conduct.  If a jury could find that these city officials were deliberately indifferent, then a jury also could find that the City of Madison's officials had a custom of being deliberately indifferent toward the use of excessive force.[6]  If the evidence is as the plaintiff contends, then a question of fact exists as to whether the kind of constitutional injuries the plaintiff received were "bound to happen."  Unlike cases that have not imposed municipal liability when the plaintiff is unable to establish a causal link between the city officials' conduct and the specific constitutional injury alleged, a jury could find that link established in this case based on the plaintiff's evidence.  *See Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999) (refusing to impose municipal liability because various conduct by different police officers

---

[6]        Although handled in two separate sections in this opinion, the plaintiff's claims of supervisory and municipal liability are extremely similar.  The evidence necessary to establish each claim practically will be the same as both require proving that the city officials were deliberately indifferent toward Officer Jarrell's previous conduct.

-13-

during a ten-year period was insufficient to show that the plaintiff's injury was bound to happen); *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (refusing to impose municipal liability because a decision to retain an officer improperly in 1979 occurred too remotely to be the proximate cause of an alleged constitutional violation occurring in 1990). Based on the plaintiff's evidence, Officer Jarrell was hired in contravention of the usual hiring practices of the Madison City Police with knowledge that he was highly skilled in martial arts. He then allegedly violated numerous police procedures and employed excessive force on at least two occasions. As stated above, the plaintiff's evidence could indicate that the city acquiesced in Officer Jarrell's conduct by failing to reprimand or discipline him, and failing to seriously investigate several complaints. If a jury finds that the plaintiff's evidence is credible, it could find that the type of constitutional injuries allegedly incurred by the plaintiff were bound to happen because of the city's failure to discipline Officer Jarrell for using excessive force. Accordingly, summary judgment is **DENIED** on this issue.

### C. State-Law Negligence Claim Against the City

The defendants seek summary judgment on Count VIII of the plaintiff's Complaint, which asserts vicarious liability on the City of Madison and its police department for the negligent actions of its employee, Officer Jarrell. (Compl. ¶ 62–63.) The defendants claim that this claim must fail as a matter of law because the City of Madison cannot be held vicariously liable under West Virginia law for the intentional actions of an employee. (Mem. Supp. Defs.' Mot. for Summ. J. 15.) The defendants argue that a political subdivision can be held vicariously liable only for their employees' negligent—but not intentional—acts. *See* W. Va. Code § 29-12A-4(c)(2) (2004) ("Political

subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance or acts by their employees while acting within the scope of employment.").

Even though the plaintiff pleads a negligence claim against Officer Jarrell in Count VI of the Complaint, the plaintiff responds to the defendants' motion merely by arguing that the West Virginia law does not preclude a claim against a political subdivision for vicarious liability stemming from an employee's intentional acts. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 22–24.) Because the defendants' contention that West Virginia law envisions vicarious liability on political subdivisions only for employees' negligent acts, the defendants are entitled to summary judgment on this claim. *See Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533 (W. Va. 1996) (explaining that conspiracy is an intentional act and that the Town of Rivesville would not be vicariously liable for one of its employee's "intentional malfeasance").

### *IV. Conclusion*

Genuine issues of material fact remain regarding whether the imposition of supervisory liability and municipal liability are proper in this case. Therefore, summary judgment on these claims must be **DENIED**. The defendants, however, are entitled to summary judgment on the plaintiff's state-law negligence claim seeking to impose vicarious liability on the City of Madison for the negligent acts of its employees. Accordingly, summary judgment on Count VIII of the plaintiff's Complaint should be **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        November 16, 2005

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE